DIAMOND McCARTHY LLP
Andrew B. Ryan, Esq. *(pro hac vice)*
James D. Sheppard, Esq. (*pro hac vice*)
1201 Elm Street, Suite 3400
Dallas, TX 75270
Telephone: (214) 389-5300
Facsimile: (214) 389-5399
aryan@diamondmccarthy.com
jsheppard@diamondmccarthy.com

*Counsel for Allan B. Diamond*
*Chapter 11 Trustee for Howrey LLP*

KORNFIELD, NYBERG, BENDES & KUHNER P.C.
Eric A. Nyberg, Esq. (Bar No. 131105)
Chris D. Kuhner, Esq. (Bar No. 173291)
1970 Broadway, Suite 225
Oakland, CA 94612
Telephone:  (510) 763-1000
Facsimile:   (510) 273-8669

*Local Counsel for Allan B. Diamond,*
*Chapter 11 Trustee for Howrey LLP*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| In re | ) |
| | ) |
| HOWREY LLP, | ) |
| | ) |
| Debtor. | ) |
| ——————————————— | ) |
| | ) |
| ALLAN B. DIAMOND, TRUSTEE, | ) Case No. C-13-3909-SBA |
| | ) |
| Plaintiff, | ) |
| | ) **STATEMENT OF RECENT** |
| v. | ) **DECISION** |
| | ) |
| KASOWITZ BENSON TORRES & | ) |
| FRIEDMAN LLP, | ) |
| | ) |
| Defendant. | ) |
| ——————————————— | |

1

Pursuant to Civil Local Rule 7-3(d)(2), Allan B. Diamond (the "Trustee"), the Chapter 11 bankruptcy trustee for Howrey LLP ("Howrey"), hereby submits this Statement of Recent Decision in connection with the law firm defendants' motions to withdraw the bankruptcy court reference. Attached hereto as **Exhibit A** is the United States Supreme Court's recent decision in *Executive Benefits Insurance Agency v. Arkison*, No. 12-1200, 573 U.S. ___ (2014).


Dated:   June 12, 2014                          */s/ Andrew B. Ryan*
                                                Andrew B. Ryan, Esq. *(pro hac vice)*
                                                James D. Sheppard, Esq. (*pro hac vice*)
                                                DIAMOND McCARTHY LLP
                                                1201 Elm Street, Suite 3400
                                                Dallas, TX 75270
                                                Telephone: (214) 389-5300
                                                Facsimile: (214) 389-5399
                                                *Counsel for Allan B. Diamond,*
                                                *Chapter 11 Trustee for Howrey LLP*


                                                Eric A. Nyberg, Esq. (Bar No. 131105)
                                                KORNFIELD, NYBERG, BENDES
                                                & KUHNER, P.C.
                                                Chris D. Kuhner, Esq. (Bar No. 173291)
                                                1970 Broadway, Suite 225
                                                Oakland, CA 94612
                                                Telephone: 510-763-1000
                                                Facsimile: 510-273-8669
                                                *Local Counsel for Allan B. Diamond, Chapter 11*
                                                *Trustee for Howrey LLP*

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 12, 2014, the foregoing document was filed with the Clerk of the Court and served by the Court's CM/ECF system upon all parties to this action.


          _/s/ Andrew B. Ryan_



EXHIBIT A

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

## EXECUTIVE BENEFITS INSURANCE AGENCY *v.* ARKISON, CHAPTER 7 TRUSTEE OF ESTATE OF BELLINGHAM INSURANCE AGENCY, INC.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 12–1200.   Argued January 14, 2014—Decided June 9, 2014

Bellingham Insurance Agency, Inc. (BIA), filed a voluntary chapter 7
bankruptcy petition.   Respondent Peter Arkison, the bankruptcy
trustee, filed a complaint in the Bankruptcy Court against petitioner
Executive Benefits Insurance Agency (EBIA) and others alleging the
fraudulent conveyance of assets from BIA to EBIA.   The Bankruptcy
Court granted summary judgment for the trustee.   EBIA appealed to
the District Court, which affirmed the Bankruptcy Court's decision
after *de novo* review and entered judgment for the trustee.   While
EBIA's appeal to the Ninth Circuit was pending, this Court held that
Article III did not permit a Bankruptcy Court to enter final judgment
on a counterclaim for tortious interference, even though final
adjudication of that claim by the Bankruptcy Court was authorized
by statute.   *Stern* v. *Marshall*, 564 U. S. ___, ___.   In light of *Stern*,
EBIA moved to dismiss its appeal for lack of jurisdiction.   The Ninth
Circuit rejected EBIA's motion and affirmed.   It acknowledged the
trustee's claims as "*Stern* claims," *i.e.,* claims designated for final
adjudication in the bankruptcy court as a statutory matter, but
prohibited from proceeding in that way as a constitutional matter.
The Court of Appeals nevertheless concluded that EBIA had
impliedly consented to jurisdiction.   The Court of Appeals also
observed that the Bankruptcy Court's judgment could instead be
treated as proposed findings of fact and conclusions of law, subject to
*de novo* review by the District Court.

*Held*:

    1. Under the Bankruptcy Amendments and Federal Judgeship Act

of 1984, federal district courts have original jurisdiction in bankruptcy cases and may refer to bankruptcy judges two statutory categories of proceedings: "core" proceedings and "non-core" proceedings. See generally 28 U. S. C. §157. In core proceedings, a bankruptcy judge "may hear and determine . . . and enter appropriate orders and judgments," subject to the district court's traditional appellate review. §157(b)(1). In non-core proceedings—those that are "not . . . core" but are "otherwise related to a case under title 11," §157(c)(1)—final judgment must be entered by the district court after *de novo* review of the bankruptcy judge's proposed findings of fact and conclusions of law, *ibid.*, except that the bankruptcy judge may enter final judgment if the parties consent, §157(c)(2).

In *Stern,* the Court confronted an underlying conflict between the 1984 Act and the requirements of Article III. The Court held that Article III prohibits Congress from vesting a bankruptcy court with the authority to finally adjudicate the "core" claim of tortious interference. The Court did not, however, address how courts should proceed when they encounter a *Stern* claim. Pp. 4–8.

2. *Stern* claims may proceed as non-core within the meaning of §157(c). Lower courts have described *Stern* claims as creating a statutory "gap," since bankruptcy judges are not explicitly authorized to propose findings of fact and conclusions of law in a core proceeding. However, this so-called gap is closed by the Act's severability provision, which instructs that where a "provision of the Act or [its] application . . . is held invalid, the remainder of th[e] Act . . . is not affected thereby." 98 Stat. 344. As applicable here, when a court identifies a *Stern* claim, it has "held invalid" the "application" of §157(b), and the "remainder" not affected includes §157(c), which governs non-core proceedings. Accordingly, where a claim otherwise satisfies §157(c)(1), the bankruptcy court should simply treat the *Stern* claim as non-core. This conclusion accords with the Court's general approach to severability, which is to give effect to the valid portion of a statute so long as it "remains 'fully operative as a law,' " *Free Enterprise Fund* v. *Public Company Accounting Oversight Bd.*, 561 U. S. 477, 509, and so long as the statutory text and context do not suggest that Congress would have preferred no statute at all, *ibid.* Pp. 8–10.

3. Section 157(c)(1)'s procedures apply to the fraudulent conveyance claims here. This Court assumes without deciding that these claims are *Stern* claims, which Article III does not permit to be treated as "core" claims under §157(b). But because the claims assert that property of the bankruptcy estate was improperly removed, they are self-evidently "related to a case under title 11." Accordingly, they

fit comfortably within the category of claims governed by §157(c)(1). The Bankruptcy Court would have been permitted to follow that provision's procedures, *i.e.,* to submit proposed findings of fact and conclusions of law to the District Court for *de novo* review. Pp. 11–12.

    4. Here, the District Court's *de novo* review of the Bankruptcy Court's order and entry of its own valid final judgment cured any potential error in the Bankruptcy Court's entry of judgment. EBIA contends that it was constitutionally entitled to review by an Article III court regardless of whether the parties consented to bankruptcy court adjudication. In the alternative, EBIA asserts that even if such consent were constitutionally permissible, it did not in fact consent. Neither contention need be addressed here, because EBIA received the same review from the District Court that it would have received had the Bankruptcy Court treated the claims as non-core proceedings under §157(c)(1). Pp. 12–13.

702 F. 3d 553, affirmed.

    THOMAS, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 12–1200

———————

## EXECUTIVE BENEFITS INSURANCE AGENCY, PETI-TIONER *v.* PETER H. ARKISON, CHAPTER 7 TRUSTEE OF THE ESTATE OF BELLINGHAM INSURANCE AGENCY, INC.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 9, 2014]

JUSTICE THOMAS delivered the opinion of the Court.

In *Stern* v. *Marshall*, 564 U. S. ___ (2011), this Court held that even though bankruptcy courts are statutorily authorized to enter final judgment on a class of bankruptcy-related claims, Article III of the Constitution prohibits bankruptcy courts from finally adjudicating certain of those claims. *Stern* did not, however, decide how bankruptcy or district courts should proceed when a "*Stern* claim" is identified. We hold today that when, under *Stern*'s reasoning, the Constitution does not permit a bankruptcy court to enter final judgment on a bankruptcy-related claim, the relevant statute nevertheless permits a bankruptcy court to issue proposed findings of fact and conclusions of law to be reviewed *de novo* by the district court. Because the District Court in this case conducted the *de novo* review that petitioner demands, we affirm the judgment of the Court of Appeals upholding the District Court's decision.

## I

Nicolas Paleveda and his wife owned and operated two companies—Aegis Retirement Income Services, Inc. (ARIS), and Bellingham Insurance Agency, Inc. (BIA).  By early 2006, BIA had become insolvent, and on January 31, 2006, the company ceased operation.  The next day, Paleveda used BIA funds to incorporate Executive Benefits Insurance Agency, Inc. (EBIA), petitioner in this case.  Paleveda and others initiated a scheme to transfer assets from BIA to EBIA.  The assets were deposited into an account held jointly by ARIS and EBIA and ultimately credited to EBIA at the end of the year.

On June 1, 2006, BIA filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Washington.  Peter Arkison, the bankruptcy trustee and respondent in this case, filed a complaint in the same Bankruptcy Court against EBIA and others.  As relevant here, the complaint alleged that Paleveda used various methods to fraudulently convey BIA assets to EBIA.[1]  EBIA filed an answer and denied many of the trustee's allegations.

After some disagreement as to whether the trustee's claims should continue in the Bankruptcy Court or instead proceed before a jury in Federal District Court, the trustee filed a motion for summary judgment against EBIA in the Bankruptcy Court.  The Bankruptcy Court granted summary judgment for the trustee on all claims, including the fraudulent conveyance claims.  EBIA then appealed that determination to the District Court.  The District Court conducted *de novo* review, affirmed the Bankruptcy Court's decision, and entered judgment for the trustee.

EBIA appealed to the United States Court of Appeals for the Ninth Circuit.  After EBIA filed its opening brief, this

---

[1] The trustee asserted claims of fraudulent conveyance under 11 U. S. C. §544, and under state law, Wash. Rev. Code, ch. 19.40 (2012).

Court decided *Stern, supra.* In *Stern*, we held that Article III of the Constitution did not permit a bankruptcy court to enter final judgment on a counterclaim for tortious interference, *id.,* at ___, even though final adjudication of that claim by the Bankruptcy Court was authorized by statute, see Part II–B, *infra.*[2] In light of *Stern*, EBIA moved to dismiss its appeal in the Ninth Circuit for lack of jurisdiction, contending that Article III did not permit Congress to vest authority in a bankruptcy court to finally decide the trustee's fraudulent conveyance claims.

The Ninth Circuit rejected EBIA's motion and affirmed the District Court. *In re Bellingham Ins. Agency, Inc.*, 702 F. 3d 553 (2012). As relevant here, the court held that *Stern*, *supra*, and *Granfinanciera, S. A.* v. *Nordberg*, 492 U. S. 33 (1989),[3] taken together, lead to the conclusion that Article III does not permit a bankruptcy court to enter final judgment on a fraudulent conveyance claim against a noncreditor unless the parties consent. 702 F. 3d, at 565. The Ninth Circuit concluded that EBIA had impliedly consented to the Bankruptcy Court's jurisdiction, and that the Bankruptcy Court's adjudication of the fraudulent conveyance claim was therefore permissible. *Id.,* at 566, 568. The Court of Appeals also observed that the Bankruptcy Court's judgment could instead be treated as proposed findings of fact and conclusions of law, subject to *de novo* review by the District Court. *Id.,* at 565–566.

We granted certiorari, 570 U. S. ___ (2013).

———————

[2] As we explain below, see Part II–B, *infra*, the statutory scheme at issue both in *Stern* and in this case grants bankruptcy courts the authority to "hear and determine" and "enter appropriate orders and judgments" in "core" proceedings. 28 U. S. C. §157(b)(1). The statute lists counterclaims like the one brought in *Stern* as "core" claims. §157(b)(2)(C).

[3] *Granfinanciera* held that a fraudulent conveyance claim under Title 11 is not a matter of "public right" for purposes of Article III, 492 U. S., at 55, and that the defendant to such a claim is entitled to a jury trial under the Seventh Amendment, *id.*, at 64.

## II

In *Stern*, we held that Article III prohibits Congress from vesting a bankruptcy court with the authority to finally adjudicate certain claims. 564 U. S., at ___. But we did not address how courts should proceed when they encounter one of these "*Stern* claims"—a claim designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter.[4]

As we explain in greater detail below, when a bankruptcy court is presented with such a claim, the proper course is to issue proposed findings of fact and conclusions of law. The district court will then review the claim *de novo* and enter judgment. This approach accords with the bankruptcy statute and does not implicate the constitutional defect identified by *Stern*.

### A

We begin with an overview of modern bankruptcy legislation. Prior to 1978, federal district courts could refer matters within the traditional "summary jurisdiction" of bankruptcy courts to specialized bankruptcy referees.[5] See *Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U. S. 50, 53 (1982) (plurality opinion). Summary jurisdiction covered claims involving "property in the actual or constructive possession of the [bankruptcy] court," *ibid.*, *i.e.*, claims regarding the apportionment of

––––––––

[4] Because we conclude that EBIA received the *de novo* review and entry of judgment to which it claims constitutional entitlement, see Part IV–B, *infra*, this case does not require us to address whether EBIA in fact consented to the Bankruptcy Court's adjudication of a *Stern* claim and whether Article III permits a bankruptcy court, with the consent of the parties, to enter final judgment on a *Stern* claim. We reserve that question for another day.

[5] Bankruptcy referees were designated "judges" in 1973. See *Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.,* 458 U. S. 50, 53, n. 2 (1982) (plurality opinion).

the existing bankruptcy estate among creditors. See Brubaker, A "Summary" Statutory and Constitutional Theory of Bankruptcy Judges' Core Jurisdiction After *Stern* v. *Marshall*, 86 Am. Bankr. L. J. 121, 124 (2012). Proceedings to augment the bankruptcy estate, on the other hand, implicated the district court's plenary jurisdiction and were not referred to the bankruptcy courts absent both parties' consent. See *MacDonald* v. *Plymouth County Trust Co.*, 286 U. S. 263, 266 (1932); see also Brubaker, *supra,* at 128.

In 1978, Congress enacted sweeping changes to the federal bankruptcy laws. See 92 Stat. 2549. The Bankruptcy Reform Act eliminated the historical distinction between "'summary'" jurisdiction belonging to bankruptcy courts and "'plenary'" jurisdiction belonging to either a district court or an appropriate state court. *Northern Pipeline, supra,* at 54 (plurality opinion); see also 1 W. Norton & W. Norton Bankruptcy Law and Practice §4:12, p. 4–44 (3d ed. 2013). Instead, the 1978 Act mandated that bankruptcy judges "shall exercise" jurisdiction over "all civil proceedings arising under title 11 or arising in or related to cases under title 11." 28 U. S. C. §§1471(b)–(c) (1976 ed., Supp. IV). Under the 1978 Act, bankruptcy judges were "vested with all of the 'powers of a court of equity, law, and admiralty,'" with only a few limited exceptions. *Northern Pipeline*, 458 U. S., at 55 (plurality opinion) (quoting §1481). Notwithstanding their expanded jurisdiction and authority, these bankruptcy judges were not afforded the protections of Article III—namely, life tenure and a salary that may not be diminished. *Id.*, at 53.

In *Northern Pipeline*, this Court addressed whether bankruptcy judges under the 1978 Act could "constitutionally be vested with jurisdiction to decide [a] state-law contract claim" against an entity not otherwise a party to the proceeding. *Id.*, at 53, 87, n. 40. The Court concluded

that assignment of that claim for resolution by the bankruptcy judge "violates Art. III of the Constitution." *Id.,* at 52, 87 (plurality opinion); see *id.,* at 91 (Rehnquist, J., concurring in judgment). The Court distinguished between cases involving so-called "public rights," which may be removed from the jurisdiction of Article III courts, and cases involving "private rights," which may not. See *id.,* at 69–71 (plurality opinion); *id.,* at 91 (Rehnquist, J., concurring in judgment). Specifically, the plurality noted that "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights," which belong in an Article III court. *Id.,* at 71–72, and n. 26.

### B

Against that historical backdrop, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984—the Act at issue in this case. See 28 U. S. C. §151 *et seq.* Under the 1984 Act, federal district courts have "original and exclusive jurisdiction of all cases under title 11," §1334(a), and may refer to bankruptcy judges any "proceedings arising under title 11 or arising in or related to a case under title 11," §157(a).[6] Bankruptcy judges serve 14-year terms subject to removal for cause, §§152(a)(1), (e), and their salaries are set by Congress, §153(a).

The 1984 Act largely restored the bifurcated jurisdictional scheme that existed prior to the 1978 Act. The 1984 Act implements that bifurcated scheme by dividing all matters that may be referred to the bankruptcy court into two categories: "core" and "non-core" proceedings. See generally §157.[7] It is the bankruptcy court's responsibility

---

[6] In addition, district courts may also withdraw such matters from the bankruptcy courts for "cause shown." §157(d).

[7] In using the term "core," Congress tracked the *Northern Pipeline*

to determine whether each claim before it is core or non-core. §157(b)(3); cf. Fed. Rule Bkrtcy. Proc. 7012. For core proceedings, the statute contains a nonexhaustive list of examples, including—as relevant here—"proceedings to determine, avoid, or recover fraudulent conveyances." §157(b)(2)(H). The statute authorizes bankruptcy judges to "hear and determine" such claims and "enter appropriate orders and judgments" on them. §157(b)(1). A final judgment entered in a core proceeding is appealable to the district court, §158(a)(1), which reviews the judgment under traditional appellate standards, Rule 8013.

As for "non-core" proceedings—*i.e.,* proceedings that are "not . . . core" but are "otherwise related to a case under title 11"—the statute authorizes a bankruptcy court to "hear [the] proceeding," and then "submit proposed findings of fact and conclusions of law to the district court." §157(c)(1). The district court must then review those proposed findings and conclusions *de novo* and enter any final orders or judgments. *Ibid.* There is one statutory exception to this rule: If all parties "consent," the statute permits the bankruptcy judge "to hear and determine and to enter appropriate orders and judgments" as if the proceeding were core. §157(c)(2).

Put simply: If a matter is core, the statute empowers the bankruptcy judge to enter final judgment on the claim, subject to appellate review by the district court. If a matter is non-core, and the parties have not consented to final adjudication by the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions of law. Then, the district court must review the proceeding *de novo* and enter final judgment.

––––––––––

plurality's use of the same term as a description of those claims that fell within the scope of the historical bankruptcy court's power. See 458 U. S., at 71 ("[T]he restructuring of debtor-creditor relations, which is at the *core* of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights . . ." (emphasis added)).

### C

*Stern* v. *Marshall*, 564 U. S. ___, confronted an underlying conflict between the 1984 Act and the requirements of Article III. In particular, *Stern* considered a constitutional challenge to the statutory designation of a particular claim as "core." The bankrupt in that case had filed a common-law counterclaim for tortious interference against a creditor to the estate. *Id.*, at ___. Section 157(b)(2)(C), as added by the 1984 Act, lists "counterclaims by the estate against persons filing claims against the estate" as a core proceeding, thereby authorizing the bankruptcy court to adjudicate the claim to final judgment. See *supra* this page. The respondent in *Stern* objected that Congress had violated Article III by vesting the power to adjudicate the tortious interference counterclaim in bankruptcy court. *Stern*, 564 U. S., at ___.

We agreed. *Id.*, at ___. In that circumstance, we held, Congress had improperly vested the Bankruptcy Court with the "'judicial Power of the United States,'" just as in *Northern Pipeline.* 564 U. S., at ___, ___ (slip op., at 21, 38). Because "[n]o 'public right' exception excuse[d] the failure to comply with Article III," we concluded that Congress could not confer on the Bankruptcy Court the authority to finally decide the claim. *Id.,* at ___. (slip op., at 21).

### III

*Stern* made clear that some claims labeled by Congress as "core" may not be adjudicated by a bankruptcy court in the manner designated by §157(b). *Stern* did not, however, address how the bankruptcy court should proceed under those circumstances. We turn to that question now.

The Ninth Circuit held that the fraudulent conveyance claims at issue here are *Stern* claims—that is, proceedings that are defined as "core" under §157(b) but may not, as a constitutional matter, be adjudicated as such (at least in

the absence of consent, see n. 4, *supra*. See 702 F. 3d, at 562. Neither party contests that conclusion.

The lower courts, including the Ninth Circuit in this case, have described *Stern* claims as creating a statutory "gap." See, *e.g.,* 702 F. 3d, at 565. By definition, a *Stern* claim may not be adjudicated to final judgment by the bankruptcy court, as in a typical core proceeding. But the alternative procedure, whereby the bankruptcy court submits proposed findings of fact and conclusions of law, applies only to non-core claims. See §157(c)(1). Because §157(b) does not explicitly authorize bankruptcy judges to submit proposed findings of fact and conclusions of law in a *core proceeding*, the argument goes, *Stern* created a "gap" in the bankruptcy statute. See 702 F. 3d, at 565. That gap purportedly renders the bankruptcy court powerless to act on *Stern* claims, see Brief for Petitioner 46–48, thus requiring the district court to hear all *Stern* claims in the first instance.

We disagree. The statute permits *Stern* claims to proceed as non-core within the meaning of §157(c). In particular, the statute contains a severability provision that accounts for decisions, like *Stern*, that invalidate certain applications of the statute:

> "If any provision of this Act or the application thereof to any person or circumstance is held invalid, the remainder of this Act, or the application of that provision to persons or circumstances other than those as to which it is held invalid, is not affected thereby." 98 Stat. 344, note following 28 U. S. C. §151.

The plain text of this severability provision closes the so-called "gap" created by *Stern* claims. When a court identifies a claim as a *Stern* claim, it has necessarily "held invalid" the "application" of §157(b)—*i.e.,* the "core" label and its attendant procedures—to the litigant's claim. Note following §151. In that circumstance, the statute

instructs that "the remainder of th[e] Act . . . is not affected thereby." *Ibid.* That remainder includes §157(c), which governs non-core proceedings. With the "core" category no longer available for the *Stern* claim at issue, we look to §157(c)(1) to determine whether the claim may be adjudicated as a non-core claim—specifically, whether it is "not a core proceeding" but is "otherwise related to a case under title 11." If the claim satisfies the criteria of §157(c)(1), the bankruptcy court simply treats the claims as non-core: The bankruptcy court should hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment.

The conclusion that the remainder of the statute may continue to apply to *Stern* claims accords with our general approach to severability. We ordinarily give effect to the valid portion of a partially unconstitutional statute so long as it "remains '"fully operative as a law,"'" *Free Enterprise Fund* v. *Public Company Accounting Oversight Bd.*, 561 U. S. 477, 509 (2010) (quoting *New York* v. *United States*, 505 U. S. 144, 186 (1992)), and so long as it is not "'evident'" from the statutory text and context that Congress would have preferred no statute at all, 561 U. S., at 509 (quoting *Alaska Airlines, Inc.* v. *Brock*, 480 U. S. 678, 684 (1987)). Neither of those concerns applies here. Thus, §157(c) may be applied naturally to *Stern* claims. And, EBIA has identified "nothing in the statute's text or historical context" that makes it "evident" that Congress would prefer to suspend *Stern* claims in limbo. 561 U. S., at 509.[8]

──────────

[8]To the contrary, we noted in *Stern* that removal of claims from core bankruptcy jurisdiction does not "meaningfully chang[e] the division of labor in the current statute." 564 U. S., at ___ (slip op., at 37). Accepting EBIA's contention that district courts are required to hear all *Stern* claims in the first instance, see Brief for Petitioner 46–48, would dramatically alter the division of responsibility set by Congress.

## IV

### A

Now we must determine whether the procedures set forth in §157(c)(1) apply to the fraudulent conveyance claims at issue in this case. The Court of Appeals held, and we assume without deciding, that the fraudulent conveyance claims in this case are *Stern* claims. See Part III, *supra*. For purposes of this opinion, the "application" of both the "core" label and the procedures of §157(b) to the trustee's claims has therefore been "held invalid." Note following §151. Accordingly, we must decide whether the fraudulent conveyance claims brought by the trustee are within the scope of §157(c)(1)—that is, "not . . . core" proceedings but "otherwise related to a case under title 11." We hold that this language encompasses the trustee's claims of fraudulent conveyance.

First, the fraudulent conveyance claims in this case are "not . . . core." The Ninth Circuit held—and no party disputes—that Article III does not permit these claims to be treated as "core." See Part III, *supra*. Second, the fraudulent conveyance claims are self-evidently "related to a case under title 11." At bottom, a fraudulent conveyance claim asserts that property that should have been part of the bankruptcy estate and therefore available for distribution to creditors pursuant to Title 11 was improperly removed. That sort of claim is "related to a case under title 11" under any plausible construction of the statutory text, and no party contends otherwise. See, *e.g.*, *Celotex Corp.* v. *Edwards*, 514 U. S. 300, 307, n. 5, 308 (1995) ("Proceedings 'related to' the bankruptcy include . . . suits between third parties which have an effect on the bankruptcy estate"). Accordingly, because these *Stern* claims fit comfortably within the category of claims governed by §157(c)(1), the Bankruptcy Court would have been permitted to follow the procedures required by that provision, *i.e.*, to submit proposed findings of fact and conclusions of

law to the District Court to be reviewed *de novo.*

### B

Although this case did not proceed in precisely that fashion, we affirm nonetheless. A brief procedural history of the case helps explain why.

As noted, §157 permits a bankruptcy court to adjudicate a claim to final judgment in two circumstances—in core proceedings, see §157(b), and in non-core proceedings "with the consent of all the parties," §157(c)(2). In this case, the Bankruptcy Court entered judgment in favor of the bankruptcy trustee without specifying in its order whether it was acting pursuant to §157(b) (core) or §157(c)(2) (non-core with consent). EBIA immediately appealed to the District Court, see §158, but it did not argue that the Bankruptcy Court lacked constitutional authority to grant summary judgment. As a result, the District Court did not analyze whether there was a *Stern* problem and did not, as some district courts have done, relabel the bankruptcy order as mere proposed findings of fact and conclusions of law. See, *e.g., In re Parco Merged Media Corp.*, 489 B. R. 323, 326 (Me. 2013) (collecting cases). The District Court did, however, review *de novo* the Bankruptcy Court's grant of summary judgment for the trustee—a legal question—and issued a reasoned opinion affirming the Bankruptcy Court. The District Court then separately entered judgment in favor of the trustee. See 28 U. S. C. §1334(b) ("[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11").

EBIA now objects on constitutional grounds to the Bankruptcy Court's disposition of the fraudulent conveyance claims. EBIA contends that it was constitutionally entitled to review of its fraudulent conveyance claims by an Article III court regardless of whether the parties consented to adjudication by a bankruptcy court. Brief for

Petitioner 25–27. In an alternative argument, EBIA asserts that even if the Constitution permitted the Bankruptcy Court to adjudicate its claim with the consent of the parties, it did not in fact consent. *Id.,* at 38.

In light of the procedural posture of this case, however, we need not decide whether EBIA's contentions are correct on either score. At bottom, EBIA argues that it was entitled to have an Article III court review *de novo* and enter judgment on the fraudulent conveyance claims asserted by the trustee. In effect, EBIA received exactly that. The District Court conducted *de novo* review of the summary judgment claims, concluding in a written opinion that there were no disputed issues of material fact and that the trustee was entitled to judgment as a matter of law. In accordance with its statutory authority over matters related to the bankruptcy, see §1334(b), the District Court then separately entered judgment in favor of the trustee. EBIA thus received the same review from the District Court that it would have received if the Bankruptcy Court had treated the fraudulent conveyance claims as non-core proceedings under §157(c)(1). In short, even if EBIA is correct that the Bankruptcy Court's entry of judgment was invalid, the District Court's *de novo* review and entry of its own valid final judgment cured any error. Cf. *Carter* v. *Kubler*, 320 U. S. 243, 248 (1943) (bankruptcy commissioner's error was cured after the District Court "made an independent and complete review of the conflicting evidence").

Accordingly, we affirm the judgment of the Court of Appeals.

*It is so ordered.*